UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEVEN GURGES,

        Petitioner,

v.                                Case No:  2:11-cv-562-FtM-38DNF

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

        Respondents.

_____/

**OPINION AND ORDER[1]**

**I.  Status**

Petitioner Steven Gurges (hereinafter "Petitioner"), proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. #1, Petition) and supporting memorandum of law (Doc. #2) challenging his judgment and conviction of robbery with the force or violence entered in the Twentieth Judicial Circuit Court, Lee County, Florida (case no. 03-CF-4397).   Petition at 1; Response at 1-2.   Petitioner was sentenced as a habitual, violent felony offender to thirty-years incarceration.   The Petition raises ten grounds for relief.

---

[1] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Respondent[2] filed a Response opposing the Petition (Doc. #19, Response) and attached supporting exhibits (Doc. #22, Exhs. 1A-1G, 2-9, 10A-10M, 11-18) consisting of the record on direct appeal and postconviction pleadings.   Respondent argues that the Petition fails to satisfy 28 U.S.C. § 2254 (d) and (e).   Respondent also argues that some grounds are not cognizable in a § 2254 petition to the extent the ground concerns matters of only state law and some grounds are unexhausted and now procedurally defaulted under Florida law.   Petitioner filed a Reply (Doc. #24, Reply).   This matter is ripe for review.

## II.   Applicable § 2254 Law

### A.   Deferential Review Required By AEDPA

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001).   Consequently, post-AEDPA law governs this action.   Abdul-Kabir, 550 U.S. at 246; Penry, 532 U.S. at 792; Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

---

[2]Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent."   The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition."   Rumsfield v. Padilla, 542 U.S. 426, 435 (2004).   This is "'the person with the ability to produce the prisoner's body before the habeas court.'"   Id. at 435-436. In this case, the proper Respondent is the Secretary of the Florida Department of Corrections.   The Florida Attorney General is dismissed from this action.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted).   See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits."   Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011).   Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court.   Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).   Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court."   Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court."   Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than

the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).   "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."   Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. at 770.   First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision.   Id. (citations omitted).   Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review."   Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005).   The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits."   Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order.   Id.

**B.   Federal Claim Must Be Exhausted in State Court**

Ordinarily, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'" Walker v. Martin, ____ U.S. ____, 131 S.Ct. 1120, 1127 (2011)(quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)).   This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.   Rhines v. Weber, 544 U.S. 269, 274 (2005).   "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.   That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."   Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider.   A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).   A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan v. Henry, 513 U.S. 364, 366 (1995)(per curiam).   "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"   McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir.

2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002).   Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief . . . . ."   Smith, 256 F.3d at 1138. A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.   First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.   House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).   In Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309, 1318 (2012), the Supreme Court held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim ..." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to Strickland. Id. In such instances, the prisoner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id.   Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause

and prejudice, if such a review is necessary to correct a fundamental miscarriage of justice.   House, 547 U.S. at 536; Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

### C.   Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).   Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).   Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.   Newland, 527 F.3d at 1184.   In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices."   Bobby Van Hook, 130 S. Ct. at 17

(internal quotations and citations omitted).    It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### III.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).   Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in

the record before the Court.   Schriro, 550 U.S. at 474; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

Petitioner was charged by information with one count of robbery in violation of Florida Statute § 812.12 (Fla. Stat. 2003) on October 14, 2003.   The State filed a notice of habitual violent felony offender advising that it would seek to have Petitioner declared and sentenced as a habitual violent felony offender pursuant to Florida Statute § 775.084 (Fla. Stat. 2003) on October 30, 2003.

Petitioner's trial began on July 29, 2004, before the Honorable Thomas S. Reese. Although not an exhaustive discussion, the following pertinent evidence was presented at trial: The victim, PF, who was a legally blind elderly man, was robbed at 1:00 A.M. in a Wal-Mart parking lot in South Fort Myers, Florida, on September 9, 2003.   PF testified that he was getting into the passenger's side of the car when a man jammed him up against the frame of the car and the car door to commit a robbery.   He stated that there was a car behind him at the time of the robbery, and that vehicle was grayish in color. Exh. 1-C at 109-123.

The victim's wife also testified that she saw a guy push her husband against the car's door, held him there and was reaching for the victim's wallet.   Id. at 129-150.   She testified that she tried to stab the robber with her car key, but couldn't, and proceeded to hit the car alarm and then ran around the car to help her husband.   Id.   The robber then walked past her, and got into a silver colored, mid-sized American car, which was not new, but a model approximately in between the 1980's to 1990's, and drove away.   As the car drove away quickly, she tried to write down the license plate and transcribed H-0-2, but it could have been H-D-2, and that there was an F in the second grouping.

The responding sheriff's officers, Wal-mart employees, and a witness who was in the parking lot at the time of the incident, also testified.    The first responding officer, Chad Edwards of the Lee County Sheriff's Office, testified that he was presented with a driver's license information regarding a potential suspect to the crime.[3]   The potential suspect had just been in the store prior to the robbery.   He ran the driver's license number through the State system and pulled the Petitioner's vehicle records.   Vehicle records revealed Petitioner's owned a silver Dodge and the license plate number was H-O-2-F-U-V.   Exh. 1-D, Vol. 22 at 253-259.

Sergeant Matthew Monahan, of the Lee County Sheriff's Office, testified that during the course of his investigation he asked the store to locate surveillance video. Exh. 1-D, Vol. 2 at 26-277.   Monahan confirmed that the video cameras were not set up to record on the day of the crime, and confirmed there was no video available of the scene outside the store.   Exh. 1-D, Vol. 2 at 262-264.

Ms. Deborah Brumfield, a witness from the parking lot, testified that she went to the South Fort Myers Wal-Mart to pick up her boyfriend who worked at Wal-mart.   Exh. 1-D, Vol. 2 at 207-235.   She parked her car outside the store and saw a dark blue or dark gray car that was pulling out.   She saw the car stop, and a man exit the vehicle and approach an elderly man.   She was unsure of the reason why the man approached the elderly man, but initially assumed it was to assist him in some way.   She described the robber as a Hispanic or white male with a deep dark tan, about 5'7 to 5'9 tall, medium

---

[3]Testimony introduced at trial revealed that Petitioner had previously been in Wal-mart attempting to return a fishing pole without a receipt.   Wal-mart returns' policy requires that a customer attempting to return merchandise without a receipt present his or her driver's license.   Petitioner provided his driver's license when attempting to make the return.   See Exh. 1-D, Vol. 2 at 179-189.

build, with dark-colored hair, wearing a t-shirt, jeans shorts or jean pants, and a baseball hat.   She described the perpetrator's car as a medium sized, four door, dark in color American vehicle.   Exh. 1-D, Vol. 2 at 215-216.

**Trial Court Error Claim**

In **ground one**, Petitioner first alleges that the trial court erred by denying defense counsel's motion for a judgment of acquittal.   Petition at 5.   Petitioner submits that the State failed to prove "identity," therefore violating his Fifth and Fourteenth Amendment rights under the United States Constitution.   Id.   In Response, Respondent submits that the trial court's decision to deny defense counsel's motion for a judgment of acquittal is not cognizable in the instant § 2254 petition because it concerns only matters of Florida law.   Response at 29-30.   Respondent further argues that ground one is not exhausted and now procedurally defaulted because Petitioner did not raise the federal constitutional dimension of the claim on direct appeal.   Id. at 30-35.

The Court will not consider whether ground one is cognizable in the instant § 2254 proceeding because a review of the record confirms that ground one is procedurally defaulted and must be dismissed.   Petitioner raised this claim of trial court error on direct appeal.   Exh. 3.   However, Petitioner cited exclusively to state law, and all of his substantive arguments addressed Florida law.   None of the cases he cited were decided on federal grounds and he did not otherwise indicate that he intended to raise a federal claim.   Baldwin, 541 U.S. at 32.   Although Florida courts address the sufficiency of the evidence under the standard applied in Jackson, 443 U.S. 307, the basis of Petitioner's argument was that there was not sufficient evidence establishing his identity.   Nothing in

this argument would have alerted the State court to the presence of a federal claim. Thus, Petitioner failed to exhaust ground one.

Petitioner would now be barred from raising his constitutional claim in the Florida courts.   Florida law procedurally bars new claims or claims that have already been raised in prior petitions when "the circumstances upon which they were based were known or should have been known at the time the prior petition was filed."   Johnson v. Singletary, 647 So.2d 106, 109 (Fla. 1994).   In order to overcome a procedural bar in federal court, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in the fundamental miscarriage of justice."   Coleman v. Thompson, 501 U.S. 722, 750 (1991); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).   Petitioner has not shown cause and prejudice, or a fundamental miscarriage of justice to overcome the procedural default.   Accordingly, ground one is dismissed as procedurally barred.

**Ineffective Assistance of Defense Counsel Claims**

Grounds Two through Ten of the Petition all pertain to defense counsel's performance at trial.   Petitioner argues that defense counsel's actions violated his Sixth Amendment rights under the United States Constitution.   See generally Petition.   Some of Petitioner's claims of ineffective assistance of counsel also allege violations of other constitutional amendments, see Memorandum, but these claims were presented to the State court only as a violation of the Sixth Amendment based on counsel's performance. See Exh. 10-A (Petitioner's postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850 raising claims under the Sixth Amendment only).   Thus, only the Sixth Amendment claims are exhausted and the remaining claims are now

procedurally defaulted under Florida law.   Supra 5-6, 11-12.   Consequently, the Court

will now turn to address each claim under the Sixth Amendment, but will discuss some

claims out of sequential order, to the extent the claims are related.

In **ground two**, Petitioner argues that trial counsel rendered ineffective assistance

of counsel by waiving his right to a speedy trial in violation of his Sixth and Fourteenth

Amendment rights.   Petition at 8.   Petitioner submits that the waiver was done at

"continuance [sic] the public defender was discharged from the case over a conflict of

interest, all of which was done before the first docket date."   Id.   Petitioner contends that

he told his counsel not to waive his right to a speedy trial.   Id.

In Response, Respondent notes that Petitioner raised this ineffective assistance

of counsel claim in a postconviction motion filed pursuant to Florida Rule of Criminal

Procedure 3.850 (hereinafter "3.850 motion").   Response at 47.   Respondent notes that

postconviction court dismissed the claim as facially insufficient.   Id. at 47-48.

Respondent argues that the state court's order denying Petitioner relief was an

unreasonable application of precedent set forth by the United States Supreme Court.   Id.

at 48.

The record confirms that Petitioner raised this claim in his Rule 3.850 motion.

Exh. 10-A at 2 (ground one of the Rule 3.850 motion).   The postconviction court issued

an order denying Petitioner relief on this claim finding as follows:

> Defendant alleges that counsel was ineffective for waiving his
> right to a speedy trial despite his "written notice" directing him
> not to do so.   Specifically, he claims that his attorney waived
> his right to a speedy trial on November 20, 2003 without his
> knowledge.   Further, he argues that the waiver had
> "psychological ramifications" on him and, if counsel had not
> waived his right to a speedy trial, "the outcome would not have
> been so damaging" to him.   "The principle is well established

that the right to a speedy trial is waived when the defendant or his attorney requests a continuance." McArthur v. State, 303 So.2d 359, 360 (Fla. 1974). The acts of an attorney will be binding on the client enough though done without consulting him and even against his wishes. Id. Although an attorney's waiver of a defendant's right to a speedy trial can constitute ineffective assistance of counsel in some situations, the Court finds that Defendant has failed to allege or otherwise demonstrate that, if not for counsel's action, the result of the proceeding would have been different. Therefore, ground one is dismissed as facially insufficient.

Exh. 10-G at 676-677 (emphasis removed). The appellate court *per curiam* affirmed. Exh. 15.

Initially, the Court notes that the postconviction court's order of dismissal as facially insufficient constitutes a decision on the merits. Pope v. Sec'y Dep't of Corr., 680 F.3d 1271, 1285-86 (11th Cir. 2012). And, therefore, ground two is exhausted and not procedurally defaulted to the extent the argument above was raised before the State court. To the extent Petitioner raises additional factual allegations in support of his claim in his memorandum supporting the instant petition, which were not raised before the State court, that portion of the claim is unexhausted and now procedurally defaulted. See Memorandum at 11 (contending that the defense was prejudiced due to "total memory loss on vital issues."); Henderson v. Campbell, 353 F.3d 880, 897 (11th Cir. 2003)(noting that in order to establish proper exhaustion, a petitioner must have "fairly presented" the substance of his federal claims to the state courts by raising both the factual and legal premises of the claims)(citations omitted).

Turning to the merits of the exhaustion portion of the ground two, the Court finds that the State court's denial of postconviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.

Here, Petitioner satisfied neither the deficient performance nor prejudice prongs of Strickland.   Regarding defense counsel's performance, scheduling issues are the province of counsel.   An attorney, acting without consent from his client, may waive his client's right to a speedy trial because "[s]cheduling matters are plainly among those [decisions] for which agreement by counsel generally controls."   New York v. Hill, 528 U.S. 110, 115 (2000) (regarding waive of a right to speedy trial in the Interstate Agreement on Detainers); Fayson v. Sec'y, Fla. Dep't of Corr., 568 F. App'x 771, 774 (11th Cir. 2014). Based on the facts alleged, waiver occurred early in the case, after the public defender was discharged as Petitioner's counsel due to a conflict of interest.   Clearly, appointed defense counsel upon discharge of the public defender required adequate time to review the case and to develop a theory of defense.   Moreover, Petitioner has not alleged how the waiver of speedy trial caused him any prejudice at trial under Strickland.   Accordingly, Petitioner has now shown how the state court's order was unreasonable or contrary to Strickland.   Petitioner is denied relief on ground two.

In ground three and ground nine, Petitioner argues that trial counsel rendered ineffective assistance of counsel by failing to adequately investigate the case.   Petition at 8, 12.   In **ground three**, Petitioner first points to the store manager's testimony, which Petitioner asserts "would have created strong doubt as to whether the man who was a customer at Wal-mart . . . was the same man who robbed the victim."   Memorandum at 13.   Petitioner claims "that the detectives reviewed videos."   Id.   Second, Petitioner turns to witness Deborah Brumfield.   Id. at 14.   Petitioner claims that twenty hours after

the crime, Brumfield was questioned and said she "didn't see anything out of the ordinary."

Id.   Petitioner further claims prejudice as a result of counsel's failure to depose Brumfield

because it would have exposed her criminal record (for drugs), which would have called

into question her credibility.   Id. at 15.   Third, Petitioner points to Colin Joseph,

Brumfield's boyfriend and employee at Wal-mart.   Id. at 16.   Petitioner asserts that if

counsel had deposed Joseph, his testimony would have revealed that he left Wal-mart

with Brumfield at 1:00 A.M. and that Petitioner had already departed the premise at the

time the crime occurred.   Id.   Fourth, Petitioner points to officer Chad Edwards and

claims the failure to depose him caused the defense not to be able to "rebut the State

witness' contradictory statement."   Id. at 19.

In Response to ground three, Respondent notes that the postconviction court

found Petitioner's allegations as to the store manager, facially insufficient.   Response at

49.   With regard to Brumfield, Respondent notes that the postconviction court ordered

an evidentiary hearing and appointed Petitioner counsel.   After holding the evidentiary

hearing, the court denied Petitioner relief on the remaining portion of ground three.   Id.

at 49-50

A review of the record confirms that the postconviction court summarily dismissed

portions of ground three as facially insufficient:

> Defendant alleges . . . that counsel was ineffective for failing
> [to] depose four witnesses. To establish a facially sufficient
> claim of ineffective assistance of counsel for failure to call,
> interview, or present witnesses, a defendant must set forth
> four requirements: (1) the identity of the prospective
> witnesses; (2) the substance of the witnesses' testimony; (3)
> an assertion that the witnesses were available to testify; and
> (4) an explanation as to how the omission prejudiced the
> outcome of the proceedings.   Nelson v. State, 875 So.2d 579
> (Fla. 2004).   As explained in Mulvaney v. State, 885 So. 2d

1001 (Fla. 4th DCA 2004), Nelson requires the trial court to permit leave when the defendant's 3.850 motion is lacking a key allegation.   If no amendment is filed within the time allowed or if the amended claim is still facially insufficient, then the trial court can deny the claim with prejudice.   Nelson, 875 So.2d 579; see also Booker v. State, 969 So. 2d 186 (Fla. 2007).

[Defendant] claims counsel was ineffective for failing to depose "Store Manager Larry," who he claims "could of provided the truthfulness of the matter that detectives statement at trial were so indifferent and contradictory with inconsistencies concerning the videos."   He argues that Wal-mart "Store Manager Larry" was responsible for the store's video surveillance equipment and the video of the crime "would of established exactly what time and who actually committed the crime."   Ground 2(a) is speculative and conclusory in nature.   Postconviction relief cannot be based on speculative assertions. See Jones v. State, 845 So.2d 55 (Fla. 2003). Furthermore, the Defendant has not alleged or otherwise demonstrated that there is any reasonable probability that, but for counsel's failure to depose "Store Manager Larry," the result of the proceeding would have been different.   Because Defendant was already given the opportunity to amend ground 2(a) in order to state a facially sufficient claim, but was unable to do so, [the ground] is denied.

According to ground 2(b), counsel was ineffective for failing to depose prosecution witness Deborah Brumfield, who he claims originally informed police that she had not seen anything, but then testified differently at trial.   In addition, he claims Ms. Brumfield "has an extensive crime record," including a "present charge of possession of cocaine," that counsel could have used to impeach her credibility.

The record reflects that counsel impeached Ms. Brumfield during cross-examination regarding discrepancies between her initial sworn statement to police and her trial testimony on direct examination.   See attached copy of trial transcript, pages 217-232.   Accordingly, the court finds that the portion of ground 2(b) wherein Defendant alleges that counsel was ineffective for not deposing Ms. Brumfield in order to impeach her at trial, is denied as conclusively refuted by the record.

Defendant alleges in ground 2(c) that counsel was ineffective for failing to depose prosecution witness Colin Joseph.

- 17 -

Defendant claims in his original Motion that deposing Mr. Joseph could have helped establish a "time frame" of events he witnessed, thereby helping to determine whether his statement was truthful.   In his amended motion, Defendant includes a long list of possible topics and questions that counsel could have asked Mr. Joseph if he had been deposed thereby "preserving the favorable exculpatory evidence for use at trial."

Ground 2(c) is speculative and conclusory in nature. Postconviction relief cannot be based on speculative assertions. [citations omitted].  Furthermore, the Defendant has not alleged or otherwise demonstrated that there is any reasonable probability that, but for counsels'' failure to depose Mr. Joseph, the result of the proceeding would have been different.   Because Defendant was already given the opportunity to amend ground 2(c) in order to state a facially sufficient claim, but was still unable to do so, ground 2(c) is denied.

In ground 2(d), Defendant alleges that counsel was ineffective for failing to depose Officer Chad Edwards, the first officer at the crime scene.   Defendant claims Officer Edwards prepared a report that "is in disagreement with Mr. and Mrs. Fraser's sworn statements."   He alleges counsel could have used Officer Edwards' deposition to impeach his trial testimony.

Defendant's claim is based on an assumption that if Officer Edwards had been deposed, his deposition testimony would have differed from his trial testimony and, therefore, it could have been used for impeachment purposes.   This assumption is wholly speculative and conclusory in nature . . . Such conclusory allegations are facially insufficient to establish a claim of ineffective assistance of counsel pursuant to Strickland v. Washington, 466 U.S. 668. . . . . Because Defendant was already given the opportunity to amend ground 2(d) in order to state a facially sufficient claim, but was unable to do so, ground 2(d) is denied. [citations omitted].

Exh. 10-G at 679-680.   Thereafter, the postconviction court held an evidentiary hearing on Petitioner's claims about Brumfield's testimony.   After holding an evidentiary hearing, the court entered a final order:

Defendant alleges that his trial counsel was ineffective for failing [to] depose witness Deborah Brumfield, who he claims "has an extensive crime record," including a "present charge of possession of cocaine" that counsel could have used to impeach her credibility. Defendant appears to argue that counsel should have deposed Ms. Brumfield to determine whether she could have been impeached at trial based upon her prior criminal record. Notably, Defendant does not specifically state in either his Motion or amended motion that Ms. Brumfield had a prior criminal conviction that qualified for impeachment under Section 90.610.

Pursuant to Florida Statute Sec. 90.610, a party may attack the credibility of any witness by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year, or if the crime involved dishonesty or a false statement regardless of the punishment.

According to Strickland v. Washington, a claim of ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense. 466 U.S. 668 (1984). Furthermore, with "regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669.

An evidentiary hearing was held on ground 2(b) on August 24, 2009. Defendant was represented by counsel at the evidentiary hearing. Patricia Black, Defendant's trial counsel was also present at the evidentiary hearing. According to Ms. Black's evidentiary hearing testimony, she subpoenaed Ms. Brumfield for deposition on two occasions, but both times Ms. Brumfield failed to appear. Shortly thereafter, Ms. Black wrote a letter to Defendant notifying him that Ms. Brumfield had not appeared for her deposition and requesting that Defendant advise her [Black] as to how he would like to proceed. The Court notes that Ms. Black's letter was introduced into evidence at the evidentiary hearing. Defendant responded by letter, demanding that Ms. Black file a motion for speedy trial on his behalf and threatening to file a bar complaint against her if she did not do so. The letter did not indicate that he would like for Ms. Black to continue to pursue Ms. Brumfield's deposition. Defendant's letter to Ms. Black was introduced into evidence at the evidentiary hearing.

> Ms. Black also testified at the evidentiary hearing that she had reviewed Ms. Brumfield's criminal history in preparing for trial and Ms. Brumfield did not have a prior impeachable offense. Notably, Defendant did not introduce any evidence at the evidentiary hearing that would support the contention that Ms. Brumfield could have been impeached at trial based on her prior criminal record. Finally, Ms. Black testified that she was able to impeach Ms. Brumfield at trial by pointing out numerous inconsistencies between her trial testimony and her initial statement to police.

Exh. 10-L at 1-2. The appellate court *per curiam* affirmed. Exh. 15.

The Court finds that the State court's denial of postconviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.

Here, Petitioner has neither shown deficient performance nor prejudice required under Strickland. "[A] particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." Everett v. Sec'y, Fla. Dep't of Corr., ___ F.3d ___, 2015 WL 821211 *34 (11th Cir. 2015)(citations omitted). Petitioner's contentions that defense counsel did not adequately investigate Brumfield are not supported in the record. The evidence presented during the postconviction court's evidentiary hearing supported the factual determination that defense counsel did adequately investigate Brumfield, that Brumfield failed to appear for her deposition on two occasions, and that Petitioner's preference was to move forward with trial. Moreover, despite Brumfield's failure to appear for deposition, defense counsel was able to impeach Brumfield's testimony on cross-examination due to her inconsistent statements.

With regard to the other purported witnesses, including the Wal-mart store manager (who Petitioner claims would have testified about the surveillance video the officers watched) and officer Williams (whose deposition testimony would have been different than trial testimony), Petitioner has not shown that, under the facts known at the time, no reasonable attorney would have failed to further investigate the witnesses.   To the contrary, the record shows that testimony was elicited confirming that no video surveillance existed of the parking lot where the crime took place.   And, Officer Williams' trial testimony was not favorable to Petitioner at trial, so it was reasonable to conclude that Williams' deposition testimony would not have been favorable to Petitioner. Accordingly, Petitioner is denied relief on ground three.

Regarding Petitioner's claims in **ground nine** that counsel failed to locate physical evidence including a Wal-mart surveillance tape, the 911 emergency call recording, and photos of Petitioner's impounded personal vehicle, see Petition at 12, Respondent notes that the postconviction court initially dismissed the claim as facially insufficient, then allowed Petitioner to file an amended motion, and ultimately denied the claim as refuted in the record.   Response at 65-66.

A review of the record confirms that the postconviction court ultimately denied Petitioner's claims as refuted in the record and as a result of Petitioner's failure to establish prejudice under Strickland:

> Defendant claims that the video would have shown the identity of the perpetrator and would have established the actual time of the crime.   Sergeant Matthew Monahan testified at trial that during the course of the investigation, he met with one of the store managers in attempt to secure video surveillance footage.   However the monitors had not been set up to record and, therefore no footage was available . . . .
> Detective Timothy Galloway testified at trial that he

remembered seeing a surveillance video of a subject and a fishing rod in the customer service area- but he did not see video of the parking lot where the crime occurred.   However he later admitted that he was not sure whether he was thinking of the same case, but instead was merely assuming it was the same case because a fishing rod was involved. . . . . Assuming arguendo that surveillance video described by Detective Galloway existed, the Court finds that Defendant has still not established how counsel's failure to secure such video prejudiced the outcome of the case.   Therefore, [this ground] is dismissed as facially insufficient.

. . . Ms. Frasier testified at trial that after the crime, she ran from the parking lot into the store yelling that she had been robbed.   She asked people inside the store to "get help" and she then ran back to the parking lot in order to be with her husband, the victim  .  .  .  .  .  Thus, the record refutes Defendant's claim that Ms. Frasier placed a 911 call. Counsel cannot be deemed ineffective for falling to investigate and secure evidence that does not exist.   [This ground] is denied.

Regarding  .  .  .  [Petitioner's] vehicle  .  .  .  He argues that "counsel's failure to investigate and secure this piece of personal property for evidence would of at least moved the state to discover a probable violation of the law enforcement officials over readiness, in probable cause matters."   The Court finds that Defendant has failed to adequately allege that counsel's performance in relation to his vehicle was deficient within the menaing of Strickland, 466 U.S. 668.   The Court further finds that Defendant has failed to adequately allege that, but for counsel's alleged deficient performance in relation to the vehicle, the outcome of the proceedings would have been different.

Exh. 10-F at 8-9.   After allowing Petitioner to file an amended Rule 3.850 motion, the

postconviction court entered another order:

[Defendant] claims that the video would have shown the identity of the perpetrator and would have established the actual time of the crime.   Sergeant Matthew Monahan testified at trial that during the course of his investigation, he met with one of the store managers in an attempt to secure video surveillance footage.   However, the monitors had not been set up to record and, therefore, no footage was available.   See attached copy of trial transcript, pages 262-

263.   Detective Timothy Galloway testified at trial that he remembered seeing a surveillance video of a subject and a fishing rod in the customer service area—but he did not see video of the parking lot where the crime occurred.   However, he later admitted that he was not sure whether he was thinking of the same case, but instead was merely assuming it was the same case because a fishing rod was involved.   See attached copy of trial transcript, pages 296-306.

The Court dismissed ground 8(a) as facially insufficient in its order rendered March 6, 2008, stating "[a]ssuming arguendo that the surveillance video described by Detective Galloway existed, the Court finds the Defendant has still not established how counsel's failure to secure such video prejudiced the outcome of the case."   Defendant was granted leave to amend ground 8(a) by order rendered October 10, 2008. Defendant alleges in his November 10, 2008 amended motion that the videos would have exonerated him because it would have provided proof that another individual committed the crime.

After receiving Defendant's amended motion, the Court again reviewed the trial transcript.   The trial transcript reflects that counsel questioned Sergeant Monahan on cross-examination about the existence of security surveillance video.   Notably, counsel asked Sergeant Monahan, "[i]n fact, isn't it true the video only came up when I began questioning—about it on deposition." Sergeant Monahan responded, "[n]o, I checked for the video when I arrived on the scene.   You did inquire at deposition, yes."   See attached copy of trial transcript, p. 271. Thus, the record conclusively refutes Defendant's factual allegation that counsel failed to investigate and secure the store's security surveillance video for the defense. Both counsel and Sergeant Monahan acknowledged at trial that counsel had investigated whether such a video existed when she questioned Sergeant Monahan at his deposition. Accordingly, ground 8(a) is denied as conclusively refuted by the record.

In ground 8(c), Defendant alleges counsel was ineffective for failing to investigate and secure his vehicle as evidence.   He argues that his vehicle "was described with inconsistencies and was never positively identified to year, make and model." He argues that "counsel's failure to investigate and secure this piece of personal property for evidence would of [sic] at least moved the state to discover a probable violation of the law

enforcement officials over readiness, in probable cause matters."

… [G]round 8(c) was dismissed as facially insufficient based on the Court's finding that Defendant failed to adequately allege deficient performance on the part of defense counsel as well as resulting prejudice.   Defendant was subsequently granted leave to amend ground 8(c) by order rendered October 10, 2008.   Pursuant to Defendant's amended motion filed on November 10, 2008, "the Fraser's [sic] were adamant that the get-away car was a two-door."   Defendant also claims that Mrs. Frasier testified at trial that "the car had a very large door like on a two-door car," maybe a firebird or Camero [sic] typ [sic] car."   Defendant argues that his car was a four-door Dodge sedan. He claims that, had counsel introduced pictures of his vehicle into evidence at trial, it would have created reasonable doubt "that the defendant's car was not the get-away car Mrs. Fraser [sic] testified to."

The record reflects that Ms. Frasier testified at trial that the perpetrator left in a mid-size gray or silver vehicle.   When asked whether she could remember whether the vehicle was a two-door or a four-door, Ms. Frasier responded, "I told her I wasn't sure."   I thought it was a two-door because—the car door was large, like a two-door car, but you know, you can't be positive.   I was concentrating on my husband and maybe getting an identification of this person, you know." See copy of trial transcript, page 144.   When asked whether the vehicle was American or an import, Ms. Frasier stated that she thought it was an American car, "[l]ike maybe a Firebird or Camero-type [sic] car; about the size of those." See attached copy of trial transcript, page 145.   On cross-examination, Mrs. Frasier clarified that she "thought it was a two-door by the size of the car."   See attached copy of trial transcript, page 153.

Notably, the record also reflects that Deputy Chad Edwards testified at trial that, during the course of the investigation he obtained Defendant's driver's license number.   Using the number, Deputy Edwards checked Defendant's vehicle records with Department of Highway Safety and Motor vehicles and found that Defendant owned a "silver or alumni 96 Dodge, four-door," with the license plate "H-0-2-F-U-V." See attached copy of trial transcript, pages 256-259. Because Defendant's vehicle information was accurately provided to the jury by Deputy Edwards, the Court finds that counsel's failure to investigate and present cumulative evidence was not

> deficient within the meaning of Strickland, 466 U.S. 668, and did not result in prejudice to the defense. Therefore, ground 8(c) is denied on the merits.

Exh. 10-L at 10-12.   The appellate court *per curiam* affirmed.   Exh. 15.

The Court finds that the State court's denial of postconviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.

Here, Petitioner satisfied neither the deficient performance nor the prejudice prongs of Strickland.   Testimony from officer Monahan established no surveillance tape of the parking lot existed.   To the extent officer Galloway's testimony raised a question as to surveillance inside the store, the record revealed that defense counsel did ask Galloway about video footage during his deposition.   And, later Galloway clarified that he may have been confused with another case because maybe there was no surveillance tape from inside the store.   See Stoddard v. Sec'y Dep't of Corr., ___ F.3d ___, 2015 WL 658437 (11th Cir. 2015)(citing Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000)) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [in favor of competence].")).   Also, the record confirmed that there was not a 911 recording of Mrs. Frasier.   Trial testimony from Mrs. Frasier revealed that she ran into the store yelling for help and then returned to her husband.   Mrs. Frasier did not call 911.   Finally, defense counsel did not need to introduce a photograph of Petitioner's car, because such evidence would merely be cumulative considering officer Edwards provided a description of Petitioner's vehicle from records from the Department of Motor Vehicles.   Accordingly, Petitioner is denied relief on ground nine.

In grounds four and six, Petitioner faults defense counsel's performance with respect to the witnesses who "identified Petitioner as the robber."   Petition at 9, 10.   In **ground four**, Petitioner faults defense counsel for not moving to suppress the witnesses' in-court identification of him as the robber considering they never had an opportunity to see Petitioner's face.   Id. at 9.   In **ground six,** Petitioner faults counsel for not objecting to a "six-picture criminal photo pack," which he claims was introduced to the jury.   Id. at 10.

In Response to grounds four and six Respondent notes that the postconviction court dismissed the grounds as facially insufficient, permitted Petitioner to amend the motion, and then ultimately denied Petitioner relief.   Response at 59, 61.

Petitioner raised these claims in his Rule 3.850 motion.   As to the suppression of Mrs. Frasier's in-court identification claim, the postconviction court found as follows:

> The record reflects that Mrs. Frasier did not identify Defendant as the perpetrator at trial.   Instead, she could only state that the Defendant's size and build were similar to the perpetrator's, whom she only saw from the back and side. See attached copy of trial transcript, pages 146-149.
>
> In its March 6, 2008 order, the Court dismissed [the ground] as facially insufficient, finding that, "Defendant has failed to set forth any reasonable basis upon which a motion to suppress could have been filed . . . . Furthermore, because Mrs. Frasier admitted at trial that she was unable to positively identify Defendant, counsel's failure to file such a motion could not have possibly changed the outcome the proceedings."   Defendant was granted leave to amend [the ground] . . . . .
>
> According to [the] . . . amended motion, Ms. Frasier testified at trial the perpetrator was in his 30's or early 40's. Defendant claims he was 41 years old at the time of the trial. He concludes that Ms. Frasier's in-court identification was "very prejudicial."   Once again, the Court finds that Defendant has failed to set forth any reasonable basis upon which a motion to suppress could have been filed.

> Accordingly, because the claim continues to be deficient despite the fact that Defendant was given the opportunity to amend it, ground 3 is denied.

Exh. 10-J at 3-4.   The appellate court *per curiam* affirmed.   Exh. 15.

With respect to Petitioner's photo-pack claim, the postconviction court entered an

ordering finding as follows:

> [Defendant claims] counsel was ineffective for failing to object at trial when the prosecution introduced a photo pack from which witness Elizabeth Kester had identified Defendant as the customer who had returned a fishing pole prior to the robbery.   Defendant argues that counsel should have objected because Ms. Kester did not witness the crime and was only identifying Defendant as a store customer rather than the perpetrator.   The record reflects that Ms. Kester, a store employee, testified at trial that she did not witness the crime.   However, the police subsequently showed her a photo pack and asked if she could pick out the person that tried to return a fishing pole to the store prior to the robbery. The photo pack was admitted into evidence after Ms. Kester testified that she was able to pick someone from it.   See attached copy of trial transcript, pages 190-196.

> By order rendered March 6, 2008, ground 5 was dismissed as facially insufficient, based on the Court's finding that, "Defendant has failed to set forth any reasonable basis upon which an objection to the photo pack could have been raised." As noted above, defendant was subsequently granted leave to amend [the ground] by order rendered October 10, 2008. In his amended motion filed on November 10, 2008, Defendant claims counsel was ineffective for failing to object to the admission of the photo pack "consisting of nothing but jail arrests" on the basis that it would "inflame" the jury against Defendant because they would be alerted to the fact that he had a criminal record from his photo.   Ground Five, as amended, is clearly a new, separate claim from that raised in the original motion for postconviction relief.   Therefore, because Defendant was given the opportunity to amend [the ground], but chose to submit a different claim, [the ground] is denied.   [citations omitted]

> Notably, even if amended ground . . . . could be considered the same claim as that raised in the original motion for postconviction relief, it would still be facially insufficient

because its allegation of prejudice is both conclusory and speculative.   Because postconviction relief cannot be based on speculative assertions, [the ground] would still be summarily denied in accordance with Gore v. State, 964 So. 2d 1257 and Booker v. State, 969 So. 2d 186.

As previously noted, on June 9, 2006 a mandate was issued in connection with the direct appeal of this case.   See attached copy of mandate.   Pursuant to Lanier v. State, 826 So. 2d 460, a trial court may deny an amended motion for postconviction relief as untimely when it raises new claims and is filed outside of the two-year time period.   Because the Court finds that the "amended" ground . . . filed on November 10, 2008 is a new claim that was filed outside of the two-year time period, it is denied as untimely.

Exh. 10-J at 6-7.   The appellate court per curiam affirmed.   Exh. 15.

The Court finds that the State court's denial of postconviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.

Here, Petitioner satisfied neither the deficient performance nor the prejudice prongs of Strickland.   With respect to Mrs. Frasier's alleged in-court identification, the record confirmed that Mrs. Frasier did not identify Defendant as the perpetrator at trial. Instead, she only testified that she only saw the robber from the back and side, but that Petitioner's size and build were similar to the perpetrator.   With regard to the photo-pack, the Wal-mart employee witness merely identified Petitioner as the person who returned the fishing pole shortly before the robbery occurred.   Thus, to the extent Petitioner cites other federal case law concerning reliability of in-court identification in his memorandum, see Memorandum at 21-22, the cases are distinguishable and inapplicable because the witnesses did not identify the Petitioner as the robber.   The postconviction court reasonably found no deficient performance based on counsel's failure to object because

there was no basis upon which counsel could have either moved to suppress Mrs. Frasier's testimony or the photo pack.   Ladd v. Jones, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them."); Owen v. Sec'y for Dept. of Corr., 568 F.3d 894, 914 (11th Cir. 2009)(applying same analysis to appellate counsel).   Accordingly, Petitioner is denied relief on grounds four and six.

Ground five contains two subparts.   In the first part of **ground five**, Petitioner faults counsel for not moving to suppress his "admission."   Petition at 10; Memorandum at 23.   Petitioner states that an officer testified that Petitioner stated "I didn't mean to hurt anyone."   Memorandum at 23-24.   In the second part of ground five, Petitioner faults defense counsel for not moving to suppress the "warrantless arrest of Petitioner for lack of probable cause."   Id. at 25-26.   Petitioner alleges officers asked his girlfriend to call them discreetly when Petitioner arrived home.   Memorandum at 26.   After he arrived home, Petitioner claims officers entered his home with "weapons drawn" and arrested him for robbery.   Id.

Respondent refers to the postconviction court's order finding the claim facially insufficient and otherwise denying the amended claim as untimely.   See Response at 61. Respondent argues that the postconviction court's decisions were reasonable and not contrary to federal precedent.   Id.

Petitioner raised these claims in his Rule 3.850 motion.   A review of the record confirms that the postconviction court found Petitioner's claim regarding his confession to be facially insufficient and the claim regarding the circumstances of Petitioner's arrest was untimely:

> Defendant alleges that counsel was ineffective for failing to suppress the statement [he] made to police on grounds that the record "lacks sufficient physical material to establish any lawful admission [sic] or confession." Specifically, he claims that there is no Miranda rights waiver form, taped interview statement, video replay showing "physical actions to substantiate legal procedures," or personal notes by detectives.   The Court is unaware of any legal authority for Defendant's assumption that there must be "physical" evidence that a confession is lawful in order for it to be admissible.   Accordingly, Defendant has failed to set forth any reasonable basis upon which a motion to suppress could be filed.   Counsel cannot be deemed ineffective for failing to raise a meritless claim.   Teffeteller v. Dugger, 734 So. 2d 1009.   Therefore, this [ground] is dismissed as facially insufficient.

Exh. 10-G at 6.   After allowing Petitioner to file an amended claim, the postconviction court found:

> By order rendered October 10, 2008, Defendant was granted leave to amend ground 4.
>
> In his . . . [amended motion], Defendant alleges that counsel was ineffective for failing to file a motion to suppress "the warrantless arrest of the defendant for lack of probable cause."   In support of his claim, he alleges numerous facts detailing the circumstances of his arrest.   The Court finds that amended ground 4 is clearly a new, separate claim from that raised in the original motion for postconviction relief. Accordingly, because Defendant was given the opportunity to amend ground 4, but instead chose to submit a different claim, ground 4 is denied.   See Booker v. State, 969 So. 2d 186.
>
> The Court notes that Defendant's appeal of his conviction and sentence were affirmed without a written opinion and the mandate was issued on June 9, 2006.   See attached copy of mandate. Pursuant to Lanier v. State, 826 So. 2d 460 (Fla. 1st DCA 2002), a trial court may deny an amended motion for postconviction relief as untimely when it raises new claims filed outside of the two-year time period.   Because the Court finds that the "amended" ground . . . filed on November 10, 2008 is a new claim that was filed outside the two-year time period, it is denied as untimely.

Exh. 10-J at 4-5.   The appellate court per curiam affirmed.   Exh. 15.

The Court finds that the State court's denial of postconviction relief on ground five did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.

Here, Petitioner satisfied neither the deficient performance nor the prejudice prongs of Strickland.   Based on the record, the postconviction court reasonably concluded that there was no basis for defense counsel to move to suppress Petitioner's incriminatory statement that he "did not mean to hurt anyone."   Officer Galloway testified that he interviewed Petitioner upon him voluntarily arriving at the police station, Exh. 10A-M at 28; that he read Petitioner his Miranda rights; Id. at 285-287; that Petitioner understood and waived those rights, Id., after which Petitioner acknowledged being at the Wal-mart at 1:00 a.m. to return a fishing pole and stated that "he did not mean to hurt anyone, Id. at 292-293.   Based on the unrefuted evidence presented at trial, defense counsel's performance cannot be deemed deficient for failing to raise a meritless claim. Ladd, 864 F.2d at 110.   Accordingly, the first portion of ground five is denied.

The second portion of ground five is procedurally defaulted.   The postconviction court determined that Petitioner's claim concerning the circumstances of his arrest did not relate to his claim that defense counsel should have moved to suppress his statement; and, therefore was untimely under Florida law.   Consequently, this Court finds ground five, subpart two, is unexhausted and procedurally defaulted.   Supra at 4-6.   Petitioner has not alleged, much less shown, cause and prejudice, or a fundamental miscarriage of justice to overcome the procedural default of this ground.   Accordingly, the second portion of ground five is dismissed as procedurally defaulted.

In ground **seven** Petitioner raises a claim concerning ineffective assistance of counsel for not objecting when a juror was asleep.   Petition at 11.   Petitioner contends that a juror slept during "substantial portions of the trial.   Memorandum at 32.   Petitioner further points out that the trial judge made a finding on the record that the juror was asleep.   Id. at 33.   Petitioner argues that counsel was deficient for not objecting and moving to replace the juror with an alternate juror.   Id.

In Response, Respondent refers the Court to the postconviction court's order denying Petitioner relief on the claim.   Response at 63-64.   Significantly, the trial judge inquired of the juror and warned the juror that she would be excused if he thought she was sleeping.   Because, the trial court considered the issue *sua sponte*, the court found no prejudice because had counsel moved, the court would have ruled the same way.   Id.

A review of the record confirms that Petitioner raised this claim in his Rule 3.850 motion.   The postconviction court initially found the claim facially insufficient, allowed Petitioner to amend the claim, and nevertheless maintained the claim was subject to denial:

> Defendant claims juror Christina Painter fell asleep during his trial and "missed some very compelling testimony" and was allowed to continue as a juror "with only a warning."   The record reflects that, during a trial recess, the trial court informed both the prosecution and the defense that juror Painter appeared to sleep during a portion of the trial.   The trial judge indicated that he would speak to juror Painter and then decide whether to replace her with an alternate.   Juror Painter informed the trial court that she had not actually fallen asleep and was aware of everything that was said and everything that had taken place.   She further stated that she was no longer tired and did not think that she would fall asleep during the remainder of the trial.   The trial court informed her that if she fell asleep again that she would be excused.   See attached copy of trial transcript, pages 173-178.

> Accordingly, it appears that even if counsel had motioned the trial court to replace juror Painter with an alternate juror, the outcome of the proceeding would not have been different because the trial court considered excusing juror Painter on its own motion but ultimately decided against it.   Therefore, because Defendant has failed to demonstrate prejudice within the meaning of Strickland, ground 6 is dismissed as facially insufficient.

Exh. 10-G at 8.   The appellate court *per curiam* affirmed.   Exh. 15.

The Court finds that the State court's denial of postconviction relief on ground seven did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.

Although defense counsel did not object or move to substitute the juror, who appeared to be asleep for portions of the morning trial, the trial judge inquired of juror Painter.   See Exh. 10-C at 173-178; Exh. A at 173-178.   Juror Painter explained that she had sleep apnea and that although she "nodded," she didn't actually fall asleep, and that she understood everything that had happened at trial.   Id.   After inquiry, the trial judge warned the juror that she would be excused if it appeared in the future that she fell asleep, but did not excuse her.   Thus, the postconviction court reasonably found that defense counsel's performance did not violate Strickland because the court inquired and ultimately did not excuse the juror. In other words, the outcome would have been the same whether defense counsel had moved to replace the juror, or not.   Thus, Petitioner could not establish prejudice by defense counsel's failure to move to remove the juror. Petitioner has not shown that this decision was contrary to or an unreasonable application of Strickland.   See Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273, 1284 (11th

Cir. 2014)(denying claim of ineffective assistance of counsel for failing to move to remove a sleeping juror). Accordingly, Petitioner is denied relief on ground seven.

In ground **eight**, Petitioner alleges that counsel rendered ineffective assistance by not impeaching the state witness Brumfield due to her inconsistent statements provided twenty hours after the crime compared to her trial testimony.   Petition at 11; Memorandum at 36-40.

In Response, Respondent refers the Court to the postconviction court's order denying Petitioner relief on the claim.   Response at 66.   Respondent notes that the postconviction court reasonably determined that counsel _did_ impeach Brumfield based on her inconsistent statements.   Id. at 65 (citing trial transcript at 207-236).

The record confirms that Petitioner raised this claim in his Rule 3.850 motion.   In denying Petitioner relief, the postconviction court noted:

> Although Defendant admits that counsel attempted to impeach Ms. Brumfield with her prior statement, he claims that she did so in [an] "unskilled manner."   The reord reflects that counsel impeached Ms. Brumfield at trial by questioning her about numerous inconsistences between her trial testiomy and her prior statement to police.   See attached copy of trial transcript, pages 207-236.   The Court notes that Defendant does not set forth any specific factual allegations to support his claim that counsel's performance was deficient. Accordingly, the Court finds that [the ground] is dismissed as facially insufficient.

Exh. 10-G at 8.   The appellate court _per curiam_ affirmed.   Exh. 15.

The Court finds that the State court's denial of postconviction relief on ground eight did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the State court.   The record refuted Petitioner's

claim that trial counsel did not impeach witness Brumfield based on her inconsistent statements.   Accordingly, Petitioner is denied relief on ground eight.

In **ground ten**, Petitioner raises a <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) violation, contending that the State failed to disclose evidence.   Petition at 12; Memorandum at 46. Specifically, Petitioner alleges that his vehicle was impounded and the State prevented him from presenting photographs of his vehicle to the jury.   Petitioner believes if the jury saw the photographs, they would have realized that his vehicle did not match the description of the robber's vehicle.   Memorandum at 46-47.

In Response, Respondent asserts that the postconviction court's determination was a reasonable application of federal law because the record refutes Petitioner's allegations.   Response at 72.   Further, Respondent notes that a <u>Brady</u> claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the defendant."   Response at 71-72 (citing <u>Maharaf v. State</u>, 778 So.2d 944, 954 (Fla. 2000)).

The record confirms that Petitioner raised this claim in his Rule 3.850 motion.   In denying Petitioner relief on this claim, the postconviction court noted:

> Defendant would clearly know or readily have the means to know the year, make, model and color of his own vehicle. Therefore, the State's decision not to admit such evidence at trial cannot properly be considered a <u>Brady</u> violation and [the ground] is denied.

Exh. 10-G at 10.   The appellate court *per curiam* affirmed.   Exh. 15.

The Court finds that the State court's denial of postconviction relief on ground ten did not result in a decision that was "contrary to, or involved an unreasonable application of" United States Supreme Court precedent, or "in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented" in the State court.   Petitioner clearly knew the description of his vehicle and could have presented such evidence to the jury.   Therefore, no <u>Brady</u> violation occurred.   <u>See</u> <u>also</u> <u>supra</u> at 23-24 (for discussion concerning trial testimony on the description of the robber's car).   Accordingly, Petitioner is denied relief on ground ten.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Florida Attorney General is dismissed as a Respondent.

2.   The Petition for Writ of Habeas Corpus ([Doc. #1](#)) is **DENIED with prejudice**.   Grounds One and second portion of Ground Five are dismissed as procedurally defaulted.   The remaining grounds are denied.

3.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability on either petition.   A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").   28 U.S.C. § 2253(c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 184 (2009).   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v.</u>

Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further", Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)(citations and internal quotation marks omitted).   Petitioner has not made the requisite showing in these circumstances.   Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Fort Myers, Florida on this 16th day of March, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: alr
Copies: All Parties of Record